UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMIL DINSIO,

                              Plaintiff,              1:16-CV-0324
                                                      (GTS/CFH)
v.

APPELLATE DIVISION, THIRD DEPARTMENT,
A State Court of Appeals,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

AMIL DINSIO, 97-A-5765
  Plaintiff, *Pro Se*
Livingston Correctional Facility
P.O. Box 91
Sonyea, New York 14556

HON. ERIC T. SCHNEIDERMAN                    COLLEEN D. GALLIGAN, ESQ.
Attorney General for the State of New York   DENISE P. BUCKLEY, ESQ.
  Counsel for Defendants                     Assistant Attorneys General
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action filed by Amil Dinsio

("Plaintiff") against the New York State Supreme Court, Appellate Division, Third Judicial

Department ("Defendant" or "Third Department"), are Defendant's motion to dismiss Plaintiff's

Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1),

and/or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 22), and

Plaintiff's motion to "supplement [his] legal filings with additional evidence." (Dkt. No. 33).

For the reasons set forth below, Plaintiff's motion to supplement is granted, and Defendant's motion to dismiss is granted.

I.    **RELEVANT BACKGROUND**

    A.    **Plaintiff's Amended Complaint**

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows. (Dkt. No. 10.)[1]  In June of 1997, Plaintiff was convicted of armed robbery and kidnapping a police officer in the Town of East Greenbush, New York. (Dkt. No. 1, ¶¶ 1-2 [Pl.'s Compl.].)  Plaintiff was sentenced to serve 25 years in prison. (*Id.*, ¶ 2.)  Thereafter, Plaintiff appealed his conviction and filed federal habeas corpus petitions regarding his incarceration, which were denied. (*Id.*, ¶ 4.)

On May 27, 2011, the New York County Court, Rensselaer County ("Rensselaer County Court"), dismissed Plaintiff's motions to vacate his convictions, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, which were based on various claims regarding the proof offered at trial, including an allegation that a tape recording of police radio transmissions was fabricated and/or fraudulent. (*Id.*, ¶ 32; Dkt. No. 1, Attach. 4, at 11 [Pl.'s Ex. "14-14-14"]; Dkt. No. 1, Attach. 15, at 2 [Pl.'s Ex. "J"].)[2]

On May 24, 2012, the Third Department issued a Decision and Order denying Plaintiff's

---

[1]    Although the Amended Complaint is the sole operative pleading pursuant to Local Rule 7.1(a)(4), the Amended Complaint improperly attempts to incorporate by reference the allegations set forth in the original Complaint. However, out of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court will refer to both pleadings for purposes of reciting the relevant allegations. (Dkt. No. 1 [Pl.'s Compl.]; Dkt. No. 10 [Pl.'s Am. Compl.].)

[2]    Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in Plaintiff's pleadings.

application pursuant to CPL § 460.15 for permission to appeal the orders entered by the

Rensselaer County Court, dated September 23, 2010, January 20, 2011, May 27, 2011, and

February 8, 2012, which denied Plaintiff's attempts to overturn his conviction.  (Dkt. No. 1, ¶ 33

[Pl.'s Compl.]; Dkt. No. 1, Attach. 18, at 2 [Pl.'s Ex. "L"].)  Justices Robert S. Rose, Elizabeth

A. Garry, Edward O. Spain, Michael E. Kavanagh, and Leslie E. Stein concurred in this

decision.  (Dkt. No. 1, Attach. 18, at 2 [Pl.'s Ex. "L"].)[3]

On June 16, 2012, Plaintiff filed a motion requesting that the Third Department

reconsider its order of May 24, 2012 (Dkt. No. 1, Attach. 51 [Pl.'s Ex. "111"]); and, while this

motion was pending, Plaintiff filed, along with a petition for a writ of mandamus to compel

pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), a request for an

Order directing the Third Department to show cause "why the Court should not be compelled to

do its CPLR § 5501(c) duties to determine if the tape is fabricated, among other mandatory Court

duties specified by the Plaintiff in his article 78."  (Dkt. No. 1, ¶ 34 [Pl.'s Compl.].)

On October 19, 2012, the Third Department sent a letter to Plaintiff advising him that it

was in receipt of his papers in support of his request for an order to show cause.  (Dkt. No. 1,

Attach. 19, at 2 [Pl.'s Ex. "M"].)  The Third Department returned these papers to Plaintiff and

suggested that he proceed by notice of petition instead.  (*Id.*; Dkt. No. 1, ¶ 35 [Pl.'s Compl.].)  In

addition, the Third Department advised him that any petition filed with the court must be

accompanied by a $315.00 filing fee or a request to proceed as a poor person.  (Dkt. No. 1,

Attach. 19, at 2 [Pl.'s Ex. "M"].)

---

[3]    The Court takes judicial notice of the fact that Justice Stein now sits on the New York Court of Appeals and Justices Spain and Kavanagh have retired from the bench.

On October 26, 2012, Plaintiff wrote to the Clerk of the Third Department and advised the Clerk that his appeal was late because he attempted to file it with the wrong court and that he cannot re-write his order to show cause and petition.  (Dkt. No. 1, ¶ 36 [Pl.'s Compl.]; Dkt. No. 1, Attach. 20, at 2-3 [Pl.'s Ex. "N"].)  Plaintiff insisted that the Third Department accept and file his papers, while also accusing the court of "attempting to cover up prosecutorial misconduct." (*Id.*)

On November 8, 2012, the Third Department responded to Plaintiff and advised him, among other things, that no filing fee had been received and that it was returning his motion papers because a proceeding had not been properly commenced.  (Dkt. No. 1, ¶ 37 [Pl.'s Compl.]; Dkt. No. 1, Attach. 21, at 2 [Pl.'s Ex. "O"].)  However, Plaintiff's original Article 78 papers were not returned at this time, leading Plaintiff to believe that the Third Department had "stole[n]" them.  (Dkt. No. 1, ¶ 38 [Pl.'s Compl.].)  Plaintiff requested in subsequent letters that his motion papers be returned.  (*Id.*, ¶¶ 39-40.)

On April 26, 2013, Plaintiff filed a fourth motion for reconsideration[4] of the Third Department's Decision and Order dated May 24, 2012, which denied Plaintiff's application seeking to appeal the Rensselaer County Court's denial of his motions to vacate his conviction pursuant to CPL § 440.10.  (Dkt. No. 1, Attach. 50, at 35 [Pl.'s Ex. "999"].)

On May 13, 2013, the Third Department advised Plaintiff that it had not received a filing fee in connection with Case No. 516101.  (*Id.* at 36.)  On May 15, 2013, Plaintiff responded to the Third Department and advised that a filing fee would be sent and that the Third Department

---

[4]      Plaintiff's second motion for reconsideration was filed on September 2, 2012. (Dkt. No. 1, Attach. 53 [Pl.'s Ex. "222"].)  Plaintiff's third motion for reconsideration was filed on November 14, 2012.  (Dkt. No. 1, Attach. 54 [Pl.'s Ex. "333"].)

had his original Article 78 petition.  (*Id.* at 37.)  On May 23, 2013, the Third Department issued a Decision and Order in Case No. 516101, which denied Plaintiff's motions for reconsideration and transfer.  (*Id.* at 43.)  Justices Stein, Spain, Garry, and John A. Lahtinen concurred in the decision.[5]  (*Id.*)

On June 13, 2013, Plaintiff wrote to the Third Department and requested a receipt for his $315.00 filing fee and complained that CPLR § 506(b) needs to be changed because "I am sure the Court will never compel itself to do a ministerial court act that it was required to do in the first place."  (*Id.* at 38.)  On June 18, 2013, the Third Department wrote to Plaintiff acknowledging that it had received his letter of June 13, 2013, along with his moving papers for Case No. 516101.  (*Id.* at 13, 39.)  The Third Department further advised him that it could not give him a receipt for a filing fee because it had not received a filing fee from him.  (*Id.*)

On July 20, 2013, Plaintiff wrote to the Third Department and demanded to know what Justice ordered his Article 78 petition to be filed without having first received the $315.00 filing fee.  (*Id.* at 40.)  Plaintiff also provided a receipt for a money order for Case No. 516101 as evidence that the filing fee had been received by the Third Department.  (*Id.*)  On August 8, 2013, the Third Department wrote to Plaintiff and acknowledged receipt of his July 20, 2013, letter and explained that a matter could be filed with the court but that it would not be acted upon without a filing fee.  (*Id.* at 41.)  The Third Department repeated its assertion that it had not yet received a filing fee from Plaintiff.  (*Id.*)

---

[5]    The Court takes judicial notice of the fact that Justice Lahtinen has retired from the bench.

On September 5, 2013, Plaintiff wrote to the Third Department and advised it that he had discovered that the court had his filing fee since May 23, 2013, and alleged that the Third Department was attempting to steal his money. (*Id.* at 42.) Plaintiff threatened that, if the Third Department did not "remit the fraud tape issue," the judges and clerks of the Third Department could face criminal charges. (*Id.*) On the same date, Plaintiff signed an amended notice of petition and verified petition in the *Matter of Amil Dinsio v. Third Department*, Case No. 517441. (*Id.* at 3-7.) Through this petition, Plaintiff sought to compel the Third Department to "process" his Article 78 petition that was filed on October 12, 2012. (*Id.* at 4.) Plaintiff also accused the Justices of the Third Department of stealing his original Article 78 petition. (*Id.* at 5, ¶ 5.)

On September 18, 2013, the Third Department wrote to Plaintiff to acknowledge receipt of his notice of petition and verified petition. (*Id.* at 33.) In addition, the Third Department advised that it did in fact have his filing fee of $315.00, which had been received on May 23, 2013, and deposited into the court's account on May 28, 2013, but that it had not been properly noted in the computer file. (*Id.*) Because Plaintiff's motions in Case No. 516101 had already been denied, the Third Department asked Plaintiff whether he would like to have the filing fee returned to him. (*Id.*)

On November 18, 2013, Plaintiff signed and filed an amended notice of petition and amended petition in *Matter of Amil Dinsio v. Third Department* (Case No. 517441). (*Id.* at 16-28.) Through this petition, Plaintiff once again sought to compel the Third Department to process his Article 78 petition that was filed on October 12, 2012. (*Id.* at 17, ¶ 3.) On December 12, 2013, the Third Department wrote to Plaintiff to acknowledge receipt of his amended notice

of petition.  (*Id.* at 2.)  The Third Department further advised that it would be seeking legal

representation from the New York State Office of the Attorney General.  (*Id.*; Dkt. No. 1, ¶ 63

[Pl.'s Compl.].)

On December 31, 2013, Assistant Solicitor General Frank Brady from the Office of the

Attorney General wrote to Plaintiff and the Third Department that he was in receipt of the Third

Department's letter dated December 12, 2013.  (Dkt. No. 1, Attach. 49, at 12; Dkt. No. 1, ¶ 64

[Pl.'s Compl.].)  Mr. Brady advised Plaintiff and the Third Department that Plaintiff never

obtained personal jurisdiction over the Third Department and, in any event, his Article 78

petition seeking an order to compel the Third Department to grant him permission to appeal from

the orders of the Rensselaer County Court fails on its merits.  (Dkt. No. 1, Attach. 49, at 12-13.)

Specifically, Mr. Brady argued in his letter that "[m]andamus only lies to compel the

performance of acts that are mandatory, not discretionary, and only when there is a clear legal

right to the relief sought." (*Id.* at 13.)  Mr. Brady argued that the decision whether to grant

permission to appeal an order pursuant to CPL § 460.15 is a discretionary act and Plaintiff does

not have a clear legal right to such permission.  (*Id.*)

On January 10, 2014, the Third Department wrote to Plaintiff to acknowledge receipt of

Mr. Brady's letter and that it would be treating the letter as a motion to dismiss Case Nos.

516101 and 517441.  (*Id.* at 14; Dkt. No. 1, ¶ 65 [Pl.'s Compl.].)  The Third Department advised

Plaintiff to file any papers in opposition by January 24, 2014.  (Dkt. No. 1, Attach. 49, at 14.)

On March 4, 2014, Plaintiff opposed the Third Department's application to dismiss Case

Nos. 516101 and 517441.  (Dkt. No. 1, Attach. 61, at 2-22 [Pl.'s Ex. "12-12-12"].)  Among other

things, Plaintiff asserted that the Third Department's motion to dismiss was "a conspiracy

between the Attorney General's Office and some Appellate Division Justices" and that "Justices Rose, Spain, Stein, Kavanagh and Garry are caught up in attempting to cover up the People's egregious prosecutorial misconduct[.]" (*Id.* at 10-11, ¶¶ 32, 34.)  Plaintiff also asserted that he had not filed a notice of petition, dated February 12, 2013, as alleged in the motion to dismiss. (*Id.* at 10.)

On April 16, 2014, Plaintiff wrote to the Third Department and acknowledged receipt of its letter, dated April 7, 2014, which contained a copy of his notice of petition dated February 12, 2013, and stamped "as received in this office on 2/19/13." (*Id.* at 24.)  On May 30, 2014, Plaintiff wrote to the Third Department and asked the court to explain why some of his previous filings were not assigned Case No. 516101 as well as questioning the court's assertion that it had not received a money order in the amount of $305.00. (*Id.* at 31-32; Dkt. No. 1, ¶ 68 [Pl.'s Compl.].)  In addition, Plaintiff threatened that, if he is not released from prison by June 10, 2014, "a federal or state jury will be [giving his case] some very serious thought." (Dkt. No. 1, Attach. 61, at 31 [Pl.'s Ex. "12-12-12"].)  Plaintiff also threatened that he would be providing the public with information about his case and how the Third Department stole his pleadings and filing fee. (*Id.* at 32.)

On June 2, 2014, Plaintiff filed an "Addendum" to his papers filed in opposition to the Third Department's motion to dismiss. (*Id.* at 26-27.)  On June 26, 2014, the Third Department, upon its own motion, transferred all three actions, entitled *Matters of Dinisio v. Supreme Court, Appellate Division, Third Department* (Case Nos. 516101, 517441, and 518363), to the Appellate Division, Fourth Department ("the Fourth Department"). (Dkt. No. 1, Attach. 46, at 2, 5 [Pl.'s Ex. "U"]; Dkt. No. 1, ¶ 71 [Pl.'s Compl.].)  In the Third Department's letter noting that

these cases had been transferred, the Third Department stated that these matters "were discussed previously by Presiding Justice Peters [of the Third Department] and Presiding Justice Scudder [of the Fourth Department]." (Dkt. No. 1, Attach. 46, at 2 [Pl.'s Ex. "U"]; Dkt. No. 1, ¶ 72 [Pl.'s Compl.].) Based on this statement, Plaintiff alleges that "Presiding Justices Peters and Scudder had their plan of fraud all setup before June 26, 2014, when the [Third Department] transferred the matters to the Fourth Appellate Division." (Dkt. No. 1, ¶ 73 [Pl.'s Compl.].) Plaintiff further alleges that his original Article 78 motion was not transferred to the Fourth Department for its consideration but that this made little difference "because from the beginning of the transferred matters on June 26, 2014, . . . Justice Scudder was in on the cover up of the (5) Third Appellate Division Justices stealing the Plaintiff's original article 78, and its filing fee." (*Id.*, ¶¶ 73, 81-84.)

On February 6, 2015, the Fourth Department dismissed all three special proceedings Plaintiff had commenced against the Third Department. (Dkt. No. 1, Attach. 4, at 7-10 [Pl.'s Ex. "14-14-14"].) On March 23, 2015, Plaintiff filed a notice of motion for leave to appeal the Fourth Department's decision to the New York State Court of Appeals, which was subsequently denied on June 9, 2015. (*Id.* at 2-6.) Based on these allegations, Plaintiff claims that, because the Third Department stole his original Article 78 petition, he was denied access to a court, in violation of 42 U.S.C. § 1983, the First Amendment, and his due process rights under the Fourteenth Amendment. (Dkt. No. 1, at 3, 38 [Pl.'s Compl.].)

Based upon the foregoing allegations and claims, Plaintiff seeks the following five forms of relief: (1) an Order directing that an evidentiary hearing be held to determine why the Third Department stole Plaintiff's original Article 78 petition and his $315.00 filing fee; (2) an Order

declaring that CPLR §§ 7804(b) and 506(b)(1) are unconstitutional and that CPLR § 506(b)(1)

creates an inherent conflict of interest because it (a) allowed the Justices of the Third Department

to have complete control over the allegations of misconduct contained in Plaintiff's Article 78

petition, and (b) allowed the Justices to steal Plaintiff's original Article 78 petition and his filing

fee; (3) an Order directing that a copy of Plaintiff's original Article 78 petition be served on the

New York State Attorney General, Eric T. Schneiderman, and each of the Justices of the Third

Department; (4) an Order directing Mr. Schneiderman to show cause why his Office "should not

determine what the Plaintiff is asking for in his article 78, at numbers 2 through 12"; and (5) an

Order directing that an evidentiary hearing be held regarding the fact that "the [Rensselaer

County District Attorney] never produced any unquestionable documentary proof evidence to

refute the evidentiary facts set forth in the Plaintiff's Second [C.P.L §] 440.10 motion's annexed

affidavit, as required by New York State and Federal Laws."  (Dkt. No. 1, at 38 [Pl.'s Compl.];

Dkt. No. 10, at 4 [Pl.'s Am. Compl.].)

### B.    The Parties' Briefing on Defendant's Motion

#### 1.    Defendant's Memorandum of Law

Generally, in its memorandum of law, Defendant asserts four arguments.  (Dkt. No. 22

[Def.'s Mem. of Law].)

First, Defendant argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine

because he is seeking to relitigate claims that have already been decided by the Fourth

Department.  (*Id.* at 12-14.)  Specifically, Defendant argues that the Fourth Department (a) found

that the Third Department could not be compelled to determine the issues raised in Plaintiff's

CPL § 440 motions, and (b) dismissed Plaintiff's second and third proceedings as moot because

-10-

both proceedings sought a transfer to another court when they had already been transferred to the Fourth Department. (*Id.* at 13-14.) Furthermore, the New York Court of Appeals dismissed Plaintiff's appeal of the Fourth Department's decision. (*Id.* at 14.) Therefore, Defendant argues that the *Rooker-Feldman* doctrine is applicable because (a) Plaintiff lost in state court, (b) Plaintiff claims his due process rights were violated by the state court's handling of his claims, (c) Plaintiff is now asking this Court to essentially overrule the Fourth Department's decision, and (d) the state court judgment was issued on February 6, 2015, well before the commencement of this action on March 18, 2016. (*Id.*)

Second, Defendant argues that Plaintiff's claims are barred by the Eleventh Amendment because the sole named Defendant in this action is the Third Department, which is considered an arm of the State of New York. (*Id.* at 14-15.)

Third, Defendant argues that, to the extent that Plaintiff's pleadings can be read to assert claims against the individual Justices and/or clerks of the Third Department, such claims are futile because they are barred by the doctrine of judicial immunity. (*Id.* at 15-18.) Specifically, Defendant argues that Plaintiff's claims arise solely from these individuals' respective decisions and administrative actions in proceedings before the Third Department and that each individual was acting in his or her official capacity. (*Id.* at 18.)

Fourth, and finally, Defendant argues that, to the extent that Plaintiff seeks injunctive relief against the New York Attorney General, such relief must be denied because (a) the Attorney General is not a party to this action, and (b) in any event, the Eleventh Amendment bars such relief for the reasons discussed above. (*Id.* at 18.)

## 2.    Plaintiff's Opposition Memorandum of Law[6]

Generally, in opposition to Defendant's motion, Plaintiff asserts the following three arguments.  (Dkt. No. 28 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that his claims are not barred by the *Rooker-Feldman* doctrine because he is not a "state court loser." (*Id.* at 1.)  Specifically, Plaintiff argues that he has alleged a conspiracy between the Third Department's five Justices and their three court clerks to steal his Article 78 petition and filing fee in an attempt to "fix" his CPL § 460.15 appeal application so that the State of New York could win the appeal.  (*Id.*)  Furthermore, Plaintiff argues that the Fourth Department did not consider his allegations that the Third Department stole his Article 78 petition, nor did the Third Department fulfill its duties to review questions of law and fact under CPLR § 5501(c) because it did not provide a statement of reasons when they denied his appeal application (i.e., the Third Department issued an order that simply stated "Application Denied."). (*Id.* at 1-2.)

---

[6]    The Court notes that, in his opposition memorandum of law, Plaintiff attempts to incorporate by reference arguments that he made in a motion (which was filed 17 days after Defendant filed its motion to dismiss and 4 days before the deadline for Defendant to file a reply memorandum of law) requesting that the Court appoint him *pro bono* counsel (Dkt. No. 24). The Court notes that incorporating arguments by reference is prohibited in this District.  *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *9 n.65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("A party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document."); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2012 WL 2522651, at *2 n.2 (N.D.N.Y. June 27, 2012) (Suddaby, J.) (noting that, in addition to the risk that incorporating an argument by reference "could cause the referring document to violate the District's rule on page limitations . . . , such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are actually being relied upon").  However, out of special solicitude to Plaintiff, as a *pro se* civil rights litigant, the Court has reviewed the arguments set forth in his motion to give additional context to the arguments he presents in opposition to Defendant's motion to dismiss.

Second, Plaintiff argues that the Third Department is not the sole Defendant in this action because, when he filed his Article 78 petition, he also named Justice Kavanagh as a Defendant but that, by letter dated October 19, 2012, Justice Kavanagh was removed as a Defendant by the Third Department and the court was named as a Defendant instead.  (*Id.* at 2.)  Therefore, Plaintiff argues, the Eleventh Amendment does not apply.  (*Id.*)

Third, and finally, Plaintiff appears to argue that, although the New York Attorney General is not a party to this action, this Court should order that a copy of his stolen Article 78 petition be served on someone and direct that person or entity to show cause why the relief sought in the Article 78 should not be granted.  (*Id.*; Dkt. No. 24, ¶¶ 18-19.)  Plaintiff argues that the Attorney General "is the legal mouth piece for the five thief Justices" and, therefore, would be "a logical [choice] to be ordered to show cause" or, alternatively, the New York Court of Appeals would be another choice.  (Dkt. No. 24, ¶ 22.)  Plaintiff also appears to argue that CPLR § 506(b)(1) is a "sham" because it requires the Third Department to review proceedings that have been filed against the court and its Justices.  (Dkt. No. 28, at 3 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 24, ¶¶ 20-21.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

-14-

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate

decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the

famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*.

at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at

least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

-15-

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks

and citations omitted].  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

This pleading standard applies even to *pro se* litigants.  While the special leniency

afforded to *pro se* litigants somewhat loosens the procedural rules governing the form of

pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff

of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[7]  Rather, as

both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set

---

[7]     *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* plaintiffs must follow.[8]

Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted].[9]

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[10]

---

[8]     *See Rosendale v. Brusie*, 374 F. App'x 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, . . . the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega*, 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[9]     It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

[10]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-

### B.    Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a

_____

573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must

be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp.*

*Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

## III.    ANALYSIS

As an initial matter, the Court finds several problems with Plaintiff's motion to

"supplement [his] legal filings with additional evidence." (Dkt. No. 33.) The motion does not

state the relief sought (i.e., whether that relief is the supplementing of the Amended Complaint

or the supplementing of his papers in opposition to Defendant's motion to dismiss), nor does the

motion state with particularity the grounds for seeking that relief, as required by Fed. R. Civ. P.

7(b)(1)(B),(C). The motion is not supported by a memorandum of law, as required by Local

Rule 7.1(a)(1). To the extent the motion is one to supplement his Amended Complaint, it

constitutes a cross-motion that is (1) untimely (having been due at the time of the filing of, and

having been required to be part of, his opposition to Defendant's motion to dismiss) pursuant to

Local Rule 7.1(c), and (2) unsupported by a proposed Supplemental Amended Complaint as

required by Local Rule 7.1(a)(4). However, in the interest of expediency (and out of special

solicitude to Plaintiff as a *pro se* civil rights litigant), the Court will grant Plaintiff's motion to

supplement, and will consider the assertions and exhibits proffered by Plaintiff therein, when

construing both his Amended Complaint and his papers in opposition to Defendant's motion to

dismiss.

Turning to Defendant's motion, after carefully considering the matter, the Court agrees

with each of the arguments asserted by Defendant in its memorandum of law. (Dkt. No. 22, at

12-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

**A.       Whether the *Rooker-Feldman* Doctrine Bars Plaintiff's Claims**

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).  The *Rooker-Feldman* doctrine is applied under the following circumstances: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced."  *Vossbrinck*, 773 F.3d at 426 (internal quotation marks and alterations omitted).

Initially, with regard to the first prong of this standard, the Court notes that although Plaintiff argues that he is not a "state court loser," it cannot be disputed that the Third Department denied his CPL § 460.15 appeal application (Dkt. No. 1, Attach. 18, at 2 [Pl.'s Ex. "L"]) and the Fourth Department dismissed his subsequent Article 78 proceedings against the Third Department.  *Dinsio v. Supreme Court, Appellate Division, Third Judicial Dep't*, 125 A.D.3d 1313 (N.Y. App. Div. 4th Dep't 2015).  Furthermore, with regard to the fourth prong, this action was clearly commenced after Plaintiff's state court proceedings were concluded. Therefore, the Court will address the second and third prongs of the *Rooker-Feldman* doctrine.

With regard to the second and third prongs, the Court notes that Plaintiff presents claims in this action that were not asserted in his underlying state court proceedings.  For example, as discussed above in Part I.A. of this Decision and Order, Plaintiff alleges that the Third Department violated his constitutional rights by denying him access to the courts through a conspiracy to steal his Article 78 petition and filing fee.  Claims of conspiracy made in similar

contexts have been found to fall outside of the *Rooker-Feldman* doctrine by different U.S. Courts of Appeal.[11]

However, "[j]ust presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005). Similarly, "[a] plaintiff cannot overcome *Rooker-Feldman* merely by incanting the word 'conspiracy[.]'" *Frierson-Harris v. Kall*, 198 F. App'x 529, 530 (7th Cir. 2006).

In this case, it is clear from Plaintiff's allegations that what he really seeks from this Court is an order directing a state court to consider and determine the merits of his CPL § 460.15 appeal application, which in turn seeks to have his criminal conviction overturned.[12] Indeed,

---

[11]    *See, e.g.*, *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 172 (3d Cir. 2010) ("Great Western, by alleging a conspiracy between Defendants and the Pennsylvania judiciary to rule in favor of Rutter and ADR Options, is attacking the state-court judgments. But . . . Great Western is not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, Great Western claims that 'people involved in the decision violated some independent right,' that is, the right to an impartial forum. . . . The alleged agreement to reach a predetermined outcome in a case would itself violate Great Western's constitutional rights, independently of the subsequent state-court decisions."); *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) ("The claim that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine."); *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995) (holding that plaintiff's allegations of "a massive, tentacular conspiracy among the lawyers and the judges to engineer [plaintiff's] defeat by, among other things, declaring him inexcusably dilatory in complying with a discovery order[,]" did not implicate *Rooker-Feldman* because he alleged that "people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics").

[12]    For example, Plaintiff requests that this Court direct the New York Attorney General to show cause why he should not determine "what the Plaintiff is asking for in his article 78, at numbers 2 through 12[.]" (Dkt. No. 1, at 35 ¶ 4 [Pl.'s Compl.].) A review of Plaintiff's

Plaintiff appears to be upset by the fact that, when the Third Department denied his appeal

application, it did so by simply stating "Application Denied" and not by providing him with a

written opinion or statement of reasons explaining its denial, which may have demonstrated to

Plaintiff that the court considered the evidence he submitted and its reasons for not finding it

persuasive. (*See*, *e.g.*, Dkt. No. 1, ¶ 33 [Pl.'s Compl.] [alleging that, "on May 24, 2012, the

Court denied the Appeal Application by simply saying, 'Application Denied'"]; Dkt. No. 28, at

1-2 [Pl.'s Opp'n Mem. of Law] [arguing that the Justices of the Third Department did not fulfill

their duties under CPLR § 5501(c) to "review questions of law and questions of fact in all

appeals" and, instead, after "receiving the appeal application, in less than 20 days[,] the five

justices simply said 'Application Denied.'"].) Plaintiff appears to have inferred that this meant

that the Third Department did not want to confront, or simply ignored, what he believed to be the

indisputable evidence demonstrating his professed innocence because it was "prejudiced" against

him. (*See* Dkt. No. 1, Attach. 24, at 8 ¶ 5 [Pl.'s Ex. "555"] [stating that Plaintiff "argues the

Justices were prejudice and no matter how overwhelming the evidence is for a reversal or a

remittal, the Justices will ignore indisputable evidence and just say 'Application Denied,'

knowing that ends an appeal process"]; Dkt. No. 1, Attach. 50, at 19 ¶ 8 [Pl.'s Ex. "999"] ["In

other words the true fact is the Justices did not like the Petitioner filing a mandamus to compel

them to do their ministerial Court duties that the Court should have done in the first place . . . but

were not doing because the Justices wanted to cover up the People's egregious prosecutorial

_____

Article 78 petition reveals that he sought to compel the Third Department to consider his
substantive arguments made in support of overturning his conviction. (Dkt. No. 1, Attach. 35, ¶¶
2-12 [Pl.'s Ex. "J"].) Similarly, Plaintiff requests that this Court conduct an inquiry into the
sufficiency of the evidence submitted by the Rensselaer County District Attorney in Plaintiff's
underlying state court proceedings. (Dkt. No. 10, at 4 [Pl.'s Am. Compl.].)

misconduct that was brought to the Justices' attention in the Petitioner's CPL 440.10 appeal application. So the Justices simply said 'Application Denied.'"]; Dkt. No. 24, at 9 ¶ 17 [arguing that, if "the Appellate Division Justices did their CPLR § 5501(c)" duties, "the Plaintiff in May 2013, would have been a state-court winner"].)  Therefore, Plaintiff filed an Article 78 petition in an effort to force the Third Department to address the evidence he had submitted.  (*See* Dkt. No. 1, ¶ 34 [Pl.'s Compl.] [alleging that, "on October 3, 2012, the Plaintiff mailed the Court a CPLR article § 78, Order to Show Cause with an attached petition for a Writ of Mandamus to Compel, asking for a Court Order, to Order on the Appellate Court to Show Cause . . . why the Court should not be compelled to do its CPLR § 5501(c) duties to determine if the tape is fabricated"].) According to Plaintiff, however, when the Third Department was "faced with the article 78, order to show cause, [it] apparently didn't know what to do, so the thief Justices and their 3 clerks . . . simply stole the original article 78, and [his filing fee]."  (Dkt. No. 1, ¶ 79 [Pl.'s Compl.].)

Based upon Plaintiff's Complaint and his attached exhibits, the Court finds that it is apparent that the basis for the alleged "conspiracy" reaches no further than the Third Department's adverse rulings and not from a dishonest judicial proceeding or a nefarious scheme to undermine Plaintiff's attempts to appeal his conviction.  *See Frierson-Harris*, 198 F. App'x at 530 ("[J]udges generally 'agree' with one side in litigation when ruling against the other; such agreements are not corruptions of the judicial process but rather byproducts of it."); *Aldrich v. Considine*, 13-CV-11405, 2013 WL 4679722, at *6 n.4 (D. Mass. Aug. 29, 2013) ("Allegations that the state court judge agreed with the adverse side does not permit an inference of an agreement to deprive a litigant of his rights.").  Although Plaintiff is upset that the Third

Department denied his CPL § 460.15 appeal application by simply stating "Application Denied," he fails to point to any authority requiring the Third Department to issue a written opinion or a statement of reasons explaining its decision.  Similarly, the mere fact that the Third Department issued an order in this fashion does not mean, in and of itself, that it did not review "questions of law and questions of fact" (as Plaintiff alleges it was obligated to do under CPLR § 5501) before the order was issued.  Moreover, Plaintiff does not allege any facts plausibly suggesting that the Third Department did not thoroughly review his appeal application before it was denied and/or that the Third Department summarily denied his appeal application because it was "prejudiced" against him.

Perhaps most importantly, the Third Department admitted its error to Plaintiff when it realized his filing fee was not properly documented in its computer system.  (Dkt. No. 1, Attach. 50, at 33 [Pl.'s Ex. "999"].)  The court offered to refund Plaintiff his money because his motion in Case No. 516101 had already been denied.  (*Id.*)  In any event, even if the Third Department did steal Plaintiff's original Article 78 petition, the Fourth Department ruled that "mandamus does not lie" because the decision to deny Plaintiff's appeal application was discretionary. *Dinsio*, 125 A.D.3d at 1314.  Accordingly, under these circumstances, the Court finds that the second and third prongs of the *Rooker-Feldman* doctrine have been met because Plaintiff is really complaining about adverse rulings from state court judgments that he invites this Court to review and reject. *See Brackman v. Indiana*, 93 F. App'x 989, 992 (7th Cir. 2004) (holding that *Rooker-Feldman* doctrine barred plaintiff's claims where he alleged that a county circuit court had conspired to deprive him of access to the courts because plaintiff had "petitioned for and was denied a writ of mandamus by the state supreme court to compel the circuit court to act on his

-24-

filings. He may not now challenge or seek damages under 42 U.S.C. § 1983 or related statutes on account of the supreme court's refusal to compel the circuit court to act").

    **B.**    **Whether, in the Alternative, Plaintiff's Claims Are Barred by the Eleventh Amendment and Judicial Immunity**

Although the Court has found that it lacks subject-matter jurisdiction to resolve Plaintiff's claims under the *Rooker-Feldman* doctrine, the Court will, for the sake of completeness, consider this alternative argument.

Defendant correctly argues that, as the sole named Defendant in this case, the Eleventh Amendment bars Plaintiff's claims because the Third Department is considered "an arm of the State of New York." *Zuckerman v. Appellate Division, Second Dep't, Supreme Court of the State of N.Y.*, 421 F.2d 625, 626 (2d Cir. 1970); *Bernstein v. New York*, 591 F. Supp. 2d 448, 465 (S.D.N.Y. 2008).[13]  The Court further notes that, although Plaintiff argues that Justice Kavanagh was removed by the Third Department as a named Defendant in his underlying state court proceedings, Plaintiff was free to name whomever he wanted as a Defendant when he commenced the present action; however, he failed to name Justice Kavanagh as a Defendant.  In any event, even if Plaintiff were permitted to amend his Complaint to name the individual Justices and court clerks of the Third Department as Defendants, his claims would be futile because they would be barred by the doctrine of judicial immunity.

Specifically, although Plaintiff alleges that the Justices and court clerks of the Third

---

[13]    Although this issue is not raised by Defendant, it is worth noting that the Third Department is not considered a "person" for purposes of 42 U.S.C. § 1983.  *Zuckerman*, 421 F.2d at 626; *see also Ajamian v. New York*, 13-CV-1316, 2014 WL 3928448, at *6 (N.D.N.Y. Aug. 11, 2014) (D'Agostino, J.) (holding that the Third Department is not a "person" within the meaning of Section 1983).

Department conspired to steal his Article 78 petition and filing fee, such allegations are entirely speculative and conclusory for the reasons discussed above in Part III.A. of this Decision and Order.  *See Baker v. Nesi*, 11-CV-11899, 2011 WL 6028069, at *4 (D. Mass. Dec. 2, 2011) ("In considering whether absolute judicial immunity applies in this case, this Court does not credit [plaintiff's] bald allegations. Mere assertions, without more, cannot establish a cognizable legal claim here, nor can a pure linguistic spin or artful pleading in the use of the term 'conspiracy' create a claim, without an underlying factual basis for the assertion. Mere allegations by [plaintiff] that Justice Nesi agreed with his ex-wife and her attorney do not permit an inference of an agreement to deprive him of his rights.").  In any event, "judicial immunity [is not] lost by allegations that a judge conspired with one party to rule against another: 'a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges. . . .'" *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) *superseded by statute on other grounds* (quoting *Asheman v. Pope*, 793 F.2d 1072, 1078 [9th Cir. 1986] [en banc]); *see also Elder v. Athens-Clarke Cty. Ga. Through O'Looney*, 54 F.3d 694, 695 (11th Cir. 1995) (noting the Eleventh Circuit's past precedent that "judges having subject matter jurisdiction of a case are immune from damage actions under § 1983 even where the claims are based on charges of conspiracy in their rulings"); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) ("Judicial immunity attaches even if the act was done in furtherance of a conspiracy.").

     With respect to the Third Department's court clerks, "[j]udicial immunity also extends to certain others who perform functions closely associated with the judicial process." *McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010) (internal

quotation marks and citation omitted). This includes "court clerks and law clerks with respect to discretionary acts that implement judicial decisions or that are performed at the direction or under the supervision of a judge." *Bliven v. Hunt*, 418 F. Supp. 2d 135, 138 (E.D.N.Y. 2005). However, "where a court clerk performs 'ministerial, non-judicial duties,' or 'purely administrative tasks,' only qualified, good faith immunity attaches." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010).

Here, it is clear from the letter correspondence between Plaintiff and the Third Department that the Third Department does not commence proceedings until it receives a filing fee. (*See, e.g.*, Dkt. No. 1, Attach. 50, at 41 [Pl.'s Ex. "999"] [explaining that a "proceeding cannot go forward in this Court unless the filing fee is paid or the Court orders a waiver of the filing fee"].) Therefore, the court clerks are entitled to absolute immunity because, although there was an error in the court's computer system that did not properly note that Plaintiff's filing fee had been received, the clerks were following established procedure when they proceeded under the mistaken belief that Plaintiff had not paid his filing fee. *See Humphrey v. Court Clerk of the Second Circuit*, 08-CV-0363, 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (Hurd, J.) ("Court clerks enjoy absolute immunity even for administrative functions if the task was undertaken pursuant to the explicit direction of a judicial officer *or pursuant to the established practice of the court*.") (emphasis added); *McKnight*, 699 F. Supp. 2d at 526 (stating that "the Clerk's Office activities of filing and docketing legal documents are an integral part of the judicial process and are entitled to absolute immunity") (internal quotation marks omitted); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding that a clerk's scheduling duties, as part of "[a] court's inherent power to control its docket" is subject to absolute immunity).

### C.      Whether CPLR §§ 7804(b) and/or 506(b)(1) Are Unconstitutional

To the extent that Plaintiff requests a declaratory judgment that CPLR §§ 7804(b) and/or

506(b)(1) are unconstitutional (Dkt. No. 1, at 38 ¶ 3 [Pl.'s Compl.]), such relief would amount to

an advisory opinion because the Court has already determined that it lacks subject-matter

jurisdiction to adjudicate Plaintiff's claims (and has found, in the alternative, that his claims are

barred, as discussed above) and there is no longer a case-or-controversy to resolve.  *See Ashcroft*

*v. Mattis*, 431 U.S. 171, 172 (1977) ("This suit was brought to determine the police officers'

liability for the death of appellee's son. That issue has been decided, and there is no longer any

possible basis for a damages claim. Nor is there any possible basis for a declaratory judgment.

For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory

opinion upon a hypothetical basis, but for an adjudication of present right upon established

facts.") (internal quotation marks omitted); *F.X. Maltz, Ltd. v. Morgenthau*, 556 F.2d 123, 125

(2d Cir. 1977) ("The use of judicial authority to declare statutes unconstitutional is restricted to

those cases where the exercise of such power is necessary to protect litigants from actual, not

hypothetical, threats of prosecution . . . and where the controversy has 'sufficient immediacy and

reality' to warrant the issuance of such a judgment.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to "supplement [his] legal filings with additional

evidence" (Dkt. No. 33) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion to dismiss Plaintiff's Amended Complaint (Dkt.

No. 22) is **<u>GRANTED</u>**.

The Clerk of the Court is directed to enter Judgment in favor of Defendant and close this case.

Dated: July 14, 2017
   Syracuse, New York

            Hon. Glenn T. Suddaby
            Chief U.S. District Judge